UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TIMOTHY DICKERSON,

                Plaintiff,              Case No. 1:21-cv-401

v.                                   Honorable Paul L. Maloney

JOHN DAVIDS et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Warden John Davids, Assistant

Deputy Warden Unknown Traylor, Resident Unit Manager Unknown Davis, Unit Chief Unknown Maranka, and Resident Unit Manager Unknown Oversmith.

Plaintiff alleges that he completed the START program at ICF on June 24, 2020. Plaintiff states that pursuant to MDOC policy, prisoners who have successfully completed the START program are rewarded by being released to the general population. However, Plaintiff was kept in segregation. Plaintiff states that he is under mental health supervision and that corrections staff used the potential reward of a lower security status as an inducement for Plaintiff to complete the START program.

On June 29, 2020, Plaintiff filed a grievance regarding the Defendants refusal to reclassify him to the general population. Plaintiff claims that he was subsequently "returned" to full segregation "High Custody Risk" status without a hearing or notice of intent in retaliation for his use of the grievance procedure. However, despite Plaintiff's assertion that his security level was raised after he filed a grievance, a review of Plaintiff's exhibits shows that his security level was unchanged following completion of the START program. According to the November 13, 2020, step I grievance response, Plaintiff was merely kept at the same stage in the START program because of his prior history:

> After further review of this prisoners [sic] institutional behavior it was decided by the Security Classification Committee this prisoner remain on Stage 3 for the safety and security of the facility. This prisoner has received seven prisoner assaults/fights, multiple possessions of weapons, multiple staff assaults/serious injury, and Homicide in 2016 of his cell mate in Saginaw. Due to his past institutional behavior it was decided this prisoner remain as a "High Security Risk" prisoner.

(ECF No. 1-1, PageID.17.) The step I grievance decision summary states:

> The Security Classification Committee decided you remain in stage 3 of the START Program due to your past institutional behavior for the safety and security of the facility. You will remain on stage 3 as a "High Security Risk" prisoner at this time. Therefore, grievance denied at this level.

(*Id.*)  According to Director's Office Memorandum 2021-17, there are four stages through which prisoners in a START Unit may progress.  The most restrictive is Stage 0 and the least restrictive is Stage 3.  Therefore, it is clear that Plaintiff was maintained at the least restrictive stage in the START Unit following his completion of the program.  *See* DOM 2021-17 (eff. Jan. 1, 2021).

Plaintiff alleges that he attended the SCC [Security Classification Committee] meetings each month, but was denied release to the general population for a period of five months. Plaintiff alleges that he was finally released from High Security Risk status on January 29, 2021. Plaintiff contends that segregation for periods exceeding fourteen days causes damage to the mental health of any inmate, and that it is more damaging to inmates, like himself, who suffer from mental illness.

Plaintiff asserts that Defendants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments.  Plaintiff seeks damages.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.   **Fourteenth Amendment**

Plaintiff states that his continuation on High Security Risk status after completion of the START program violated his Fourteenth Amendment due process rights.  According to DOM 2021-17, START Units are an alternative to administrative segregation:

> The Department is in the process of piloting general population Start Units as an alternative placement for eligible prisoners who would otherwise be classified to Administrative Segregation.  These units provide a structured environment where prisoners move through progressive levels as the prisoner demonstrates positive behavior and program participation with the goal of reintegrating them back into a traditional general population setting.

*Id*.  As noted above, Plaintiff was maintained at a level 3, which is the least restrictive level in the START program, for a period of five months after his completion of the program.

4

Plaintiff's confinement in the START Unit for five months after he completed the START program does not violate due process. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

5

As noted above, the START Unit is an alternative to administrative segregation that permits prisoners to move through progressively less restrictive stages as they modify their behavior to confirm with prison rules, with the goal of reintegrating prisoners back into the general population. "Such a program, which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship." *Jackson v. Berean*, No. 1:18-CV-1075, 2019 WL 1253196, at *10 (W.D. Mich. Mar. 19, 2019), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019), *cert. denied*, 140 S. Ct. 2723, 206 L. Ed. 2d 857 (2020), *reh'g denied*, 141 S. Ct. 183, 207 L. Ed. 2d 1111 (2020). Therefore, the Court concludes that Plaintiff has failed to allege facts showing that he had a liberty interest in being released to the general population at the time he completed the START program.

Moreover, even if a liberty interest was implicated in this case, Plaintiff received monthly SCC reviews and was released to the general population after five months. Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559–60 (holding

6

that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

Plaintiff does not dispute that the SCC regularly evaluated him for release from the START program as a "High Security Risk" prisoner, nor does he dispute that he "received seven prisoner assaults/fights, multiple possessions of weapons, multiple staff assaults/serious injury, and Homicide in 2016 of his cell mate in Saginaw."  (ECF No. 1-1, PageID.17.)  Such a record provides ample support for the SCC to conclude that continuing him in the START program served the safety and security of the facility.  Therefore, Plaintiff's due process claim is properly dismissed.

IV.    **Eighth Amendment**

Plaintiff claims that his confinement in the START Unit for five months after he had completed the program violated his Eighth Amendment right to be free from cruel and unusual punishment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine

7

discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

        In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

        Plaintiff claims that conditions in the START Unit caused him mental distress, stating that solitary conditions lasting more than fourteen days have been deemed to constitute torture to the international community.  The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards

8

of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotations omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff was denied certain privileges as a result of his confinement in the START Unit, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

## V.    **First Amendment**

Plaintiff claims that his five month confinement in the START Unit after completion of the program was motivated by a desire to retaliate against him for his use of the grievance system. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Initially, the Court notes that Plaintiff has failed to allege facts showing that an adverse action was taken against him. As noted above, the decision to keep Plaintiff at Stage 3 of the START program was made prior to Plaintiff's act of filing a grievance. In fact, that was the motivation for Plaintiff's grievance.

Nor has Plaintiff alleged facts showing that the decision was motivated by a desire to retaliate against him. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A

screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).  Plaintiff merely alleges the ultimate fact of retaliation in this action.  He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed a grievance regarding the failure to release him to the general population after he completed the START program.  In fact, it is clear from the attachments to Plaintiff's complaint that the decision to continue his confinement in the START Unit was based on Plaintiff's history of "seven prisoner assaults/fights, multiple possessions of weapons, multiple staff assaults/serious injury, and Homicide in 2016 of his cell mate in Saginaw." (ECF No. 1-1, PageID.17.)  Accordingly, his speculative allegation fails to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   September 2, 2021                    /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge